The RESOLUTION TRUST CORPORA-
TION, as Receiver for Germantown
Trust Savings Bank, Plaintiff,

v.

CHESHIRE MANAGEMENT COMPANY,
INC., Defendant.

No. 91–2420–G.

United States District Court,
W.D. Tennessee, W.D.

Jan. 7, 1992.

Robert E. Craddock, Jr., Walt Dyer & James, Memphis, TN, William E. Long, Jr., Walt Dyer & James, Nashville, TN, for plaintiff.

Gregory G. Fletcher, Laughlin Halle Gibson & McBride, Memphis, TN, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFF RESOLUTION TRUST CORPORATION ON COUNT II OF COMPLAINT

GIBBONS, District Judge.

Before the court are the cross-motions for summary judgment of plaintiff the Resolution Trust Corporation (RTC) and defendant Cheshire Management Company (Cheshire). The RTC, as receiver for Germantown Trust Savings Bank (Germantown Trust), seeks a declaratory judgment finding that a judgment recorded by Cheshire is not a valid lien on property in the hands of the RTC as receiver and that the asserted lien is void.[1]

---

**1.** RTC initially sought three forms of relief: an injunction on Count I prohibiting Cheshire from attempting to enforce its recorded judgment against assets of the Germantown Trust receivership estate; the present declaratory judgment on Count II; and a judgment for slander to title on Count III. The parties agreed that, with the exception of the slander to title claim, the case could be resolved on cross-motions for summary judgment. The parties then entered into a Consent Order which resolved Count I of the complaint. Under the Consent Order, Cheshire released its judgment lien of record in the Register's Office, and, in return, RTC deposited the sum of $422,553.09 in escrow to act as a fund from which Cheshire could satisfy its judgment to the extent the court upholds the enforceability of the lien.

By a separate settlement agreement, the parties have resolved the payment of that portion of

Cheshire contends that a valid judgment lien exists and Cheshire is thus entitled to full payment of the judgment by the RTC.

The parties have stipulated to the facts. In 1988 Cheshire filed a breach of contract suit against Germantown Trust, a savings association charteru under the laws of the State of Tennessee. The Federal Savings and Loan Insurance Corporation (FSLIC) was appointed conservator for Germantown Trust on March 8, 1989. On August 9, 1989, the RTC succeeded the FSLIC as conservator by operation of law following the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). The RTC was substituted in place of Germantown Trust as a party defendant on August 28, 1989, the day Cheshire's breach of contract suit was set for trial. After the RTC removed the suit to federal court, this court entered a judgment on January 17, 1990, in favor of Cheshire against the RTC as conservator in the amount of $300,000.00, plus interest, fees, and expenses.[2]

On May 17, 1990, the Office of Thrift Supervision (OTS) replaced the RTC as conservator with the RTC as receiver for Germantown Trust. Seven days later, on May 24, 1990, Cheshire recorded a certified copy of the judgment in the Register's Office of Shelby County, Tennessee, as required by state law for a lien to attach to property held by Germantown Trust. See Tenn.Code Ann. § 25–5–101(b). The RTC as receiver published a notice in The Commercial Appeal newspaper on May 22, June 20 and July 20, 1990, stating, in part, that the RTC had been appointed receiver, taking possession of Germantown Trust on May 18, 1990, and thereby succeeding to all rights, titles, powers and privileges of Germantown Trust. The RTC recorded a copy of the OTS order naming the

RTC as receiver on April 2, 1991, but the RTC never sent actual notice via certified mail to either this court or the Sixth Circuit.

Cheshire contends that it has a valid judgment lien, enforceable against the RTC. Relying on provisions of the FIRREA, Cheshire argues that it properly registered its judgment which is a final adjudication by which the RTC must abide or, alternatively, either a perfected security interest or a judgment on a qualified financial contract which RTC may not avoid. The RTC does not dispute its liability for the judgment but argues that, because Cheshire did not record its judgment until after the RTC was appointed receiver, Cheshire is an unsecured creditor and should receive no more than its *pro rata* share of the receivership's assets.[3] The RTC thus states the issue as whether a judgment creditor or an institution may improve its position from unsecured to secured status after the appointment of the RTC as receiver.

Under Tennessee law, the proper registration of a judgment creates a lien which entitles the judgment creditor to priority over subsequent judgment liens and security interests. Tenn.Code Ann. § 25–5–101(b). Cheshire argues initially that no provision of the FIRREA prevented it from registering its judgment against the RTC as receiver and thereby gaining priority. Once registered, Cheshire's judgment became a perfected security interest which the RTC could not avoid pursuant to § 1821(e)(11).[4]

The RTC contends that the registration of Cheshire's judgment is barred by § 1821(d)(13)(C) of the FIRREA, which provides that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." Cheshire asserts that registration of a judgment and the creation of a lien are distinct from "attachment" and

the judgment attributable to the award of Cheshire's attorney fees. The judgment currently at issue is solely attributable to compensatory damages based upon pre-conservatorship conduct of Germantown Trust.

2. The RTC appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed the judgment on April 23, 1991.

3. The parties agree that Cheshire "shall be afforded all rights and obligations of an unsecured creditor in the Germantown Trust Savings Bank

Receivership, to the extent the lien is determined invalid." Consent Order of July 9, 1991, ¶ 4.

4. Section 1821(e)(11) provides:

No provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution except where such an interest is taken in contemplation of the institution's insolvency or with the intent to hinder, delay, or defraud the institution or the creditors of such institution.

"execution" which require judicial intervention, and thus the FIRREA does not prohibit registration. The RTC responds by arguing that, although registration is not technically the same as attachment or execution, both the spirit and practical application of § 1821(d)(13)(C) prevent the registration of a judgment after the receiver takes possession of a failed institution's assets.

The RTC argues that Congress intended for unsecured creditors of a receivership estate to be entitled only to a *pro rata* share of their claims. Section 1821(d)(13)(C) reinforces that congressional intent by prohibiting any court-imposed encumbrance on receivership property. The RTC asserts that to read § 1821(d)(13)(C) so narrowly as to allow an individual creditor to receive more than its *pro rata* share of receivership property by establishing an involuntary lien once a receiver has been appointed would be inconsistent with the traditional application of ratable distribution.

■ Section 1821(d)(13)(C) serves to prevent the encumbrance of property owned by the RTC as receiver. A judgment lien interferes with the receiver's ability to dispose of the receivership assets in much the same manner as an attachment or execution. Although little case law exists on the scope of § 1821(d)(13)(C),[5] this court construes the statute to include the prohibition of a judgment lien created after the appointment of the RTC as receiver.

■ Cheshire next argues that the assets of Germantown Trust were not actually in the possession of the RTC when Cheshire registered its judgment. Although acknowledging that the RTC was appointed receiver on May 17, 1990, seven days prior to registration of the judgment, Cheshire contends that the RTC did not "perfect" its receivership until much later because the RTC failed to record its change in status or notify this court or the Sixth Circuit of its appointment as required by 12 C.F.R. § 580.2(c).

Section 1821(d)(2) provides that, by operation of law, the RTC as receiver succeeds to "all rights, titles, powers, and privileges of the insured depository institution." The statute does not require that the receiver take any further steps in order to succeed to possession of the failed institution's assets. The regulation noted by Cheshire, § 580.2, does require that the RTC notify certain persons and entities "upon taking possession," but those requirements are not prerequisites to possession. The RTC was therefore in possession of the assets of Germantown Trust when the judgment lien arose.

■ Having determined that Cheshire's lien upon receivership assets is not valid and no perfected security interest exists, the court next considers whether any exception to the general rule of *pro rata* distribution applies to Cheshire's judgment. Cheshire asserts that its judgment is either a final adjudication by which the RTC must abide or a judgment on a "qualified financial contract" which the RTC may not disclaim. Section 1821(d)(13)(A) states that the RTC must "abide by any final unappealable judgment . . . which was rendered before the appointment of the [RTC] as conservator or receiver." This section is inapplicable because the judgment which Cheshire seeks to enforce was rendered against the RTC as conservator, not prior to the RTC's appointment.

Section 1821(e)(8)(C)(i) provides that the RTC as receiver "may not avoid any transfer of money or other property in connection with any qualified financial contract with an insured depository institution." Cheshire argues that because its judgment arose from the breach of a "qualified financial contract," the RTC cannot avoid payment of the judgment.

■ The provisions in section 1821(e) describe the extensive rights of the RTC as conservator or receiver to disaffirm, repudiate, and enforce contracts. Subsection (8) places some limits on the RTC's rights as they apply to qualified financial contracts. Although the RTC could not avoid a payment in connection with a qualified financial con-

**5.** The RTC points to a recent decision on almost identical facts in the United States District Court for the Eastern District of Arkansas. In *Grant County Savings & Loan Association v. The Resolution Trust Corp.*, No. LR–C–90–595, slip op. (E.D.Ark. Dec. 9, 1991), the court held that § 1821(d)(13)(C) prohibited a judgment lien against assets in possession of the RTC as receiver.

tract, no such contract with Cheshire presently exists. Payment of a judgment which arose from the breach of a qualified financial contract is not a transfer in connection with the contract within the context of § 1821(e)(8)(C). Thus, no statutory exception applies to Cheshire's judgment that would require the RTC to pay Cheshire more than its *pro rata* share of the receivership assets.[6]

Cheshire also argues that the RTC is estopped from denying the validity of the lien because the RTC's trial counsel failed to object after Cheshire's trial counsel specifically advised the RTC's counsel in writing that Cheshire was recording its judgment. Cheshire contends that the RTC did not notify Cheshire of its status as receiver and that the RTC's counsel did not respond to a letter dated May 22, 1990, inquiring whether registration of Cheshire's judgment would violate a stay order issued by this court.

Equitable estoppel is generally not available against the government. *Housing Auth. v. Bergland*, 749 F.2d 1184, 1190 (6th Cir.1984). For traditional principles of estoppel to apply to a government agency, Cheshire must show that an agent of the RTC made definite misrepresentations upon which Cheshire reasonably relied. *Heckler v. Community Health Servs., Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984). Even assuming that the silence of the RTC's counsel was a misrepresentation, Cheshire's reliance was not reasonable under the circumstances. The general rule is that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Id.* at 63, 104 S.Ct. at 2225. A private party cannot exert equitable estoppel to permit the statements of government agents to waive or revise the laws as enacted by Congress. *Bergland*, 749 F.2d at 1190.

Furthermore, Cheshire has failed to show that it suffered a detrimental change in its position as a result of any government misconduct. This court has determined that under federal law Cheshire is not entitled to more than its *pro rata* share of the receiver-

ship assets because Cheshire did not register its judgment prior to the establishment of the receivership. Even if counsel for the RTC had responded to Cheshire's letter or promptly notified Cheshire of its change in status, it would have been too late for Cheshire to register its lien because the RTC had already been appointed receiver. Thus, regardless of the government's conduct, Cheshire would receive no more than its *pro rata* share. The RTC is not equitably estopped from denying the validity of Cheshire's lien because Cheshire "may not bend the government's mistake into a windfall for [itself]." *Tennessee v. Dole*, 749 F.2d 331, 338 (6th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).

Accordingly, summary judgment is granted to plaintiff, and the judgment lien asserted against assets of Germantown Trust in the possession of the RTC as receiver is declared invalid.

IT IS SO ORDERED.

---

6. Because the court has determined that § 1821(d)(13)(C) bars the establishment of Cheshire's lien and no statutory exceptions apply, the court will not address the RTC's additional arguments under §§ 1825(b)(2), 1821(j), and 1464(d)(2)(D).